(93 Misc. Rep. 24)

INTERBORO BREWING CO., Inc., v. INDEPENDENT CONSUMERS' ICE CO., Inc.

(Supreme Court, Appellate Term, First Department.    December 28, 1915.)

1. EVIDENCE ⏣⏤150—MATERIALITY—SIMILAR FACTS—REMOTENESS.

In an action to recover for ice furnished defendant by plaintiff, defended on the ground that the ice did not conform to a warranty of merchantability, evidence that, three days after the last delivery of ice, a bacteriological examination was made of ice taken from plaintiff's factory, which disclosed the presence of bacilli, was inadmissible; the time being too remote from the date of last delivery to give the evidence value as bearing on the condition of the ice at that time.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 439; Dec. Dig. ⏣⏤150.]

---

⏣⏤For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

2. EVIDENCE ⬉⟿244—COMPETENCY—ADMISSIONS—AGENT OF CORPORATION.

In an action to recover for ice furnished, defended on the ground that it was unfit for use, evidence that the plaintiff's manager and the chairman of its executive committee had admitted that the ice furnished was defective and agreed to an allowance of 15 cents per cake was proper.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 916-936; Dec. Dig. ⬉⟿244.]

3. SALES ⬉⟿445—BREACH OF WARRANTY—QUESTION FOR JURY.

In an action to recover for ice furnished, whether a warranty of quality was broken as to all the ice delivered *held* for the jury under the evidence.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1303-1308; Dec. Dig. ⬉⟿445.]

4. SALES ⬉⟿442—REMEDIES OF BUYER—BREACH OF WARRANTY—DAMAGES.

Where the seller of artificial ice delivered it to the buyer's customers, receiving 60 cents a cake for the buyer's account, and, on account of the poor quality of the ice, the buyer was compelled to furnish 15 cents worth of natural ice without charge as an allowance upon each cake of artificial ice delivered by plaintiff, such buyer was damaged 15 cents per cake.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1284-1301; Dec. Dig. ⬉⟿442.]

5. APPEAL AND ERROR ⬉⟿837—REVIEW—DISMISSAL OF COUNTERCLAIM.

In reviewing the propriety of dismissing defendant's counterclaim, the Appellate Term can consider only whether defendant established a prima facie case for the jury.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3262-3272, 3274-3277, 3289; Dec. Dig. ⬉⟿837.]

6. SALES ⬉⟿288—BREACH OF WARRANTY—WAIVER—STATUTE.

Under Sales Act (Laws 1911, c. 571) § 130, providing that, in the absence of express or implied agreement of the parties, acceptance of the goods by the buyer shall not discharge the seller from liability in damages or other legal remedy for breach of warranty, but that if, after acceptance, the buyer fails to notify the seller of any breach of warranty within a reasonable time, the seller shall not be liable, where the buyer of ice under a warranty of quality notified the seller, immediately upon discovering that the ice was defective, that it relied upon the warranty, and it continued to take the ice only because plaintiff agreed to make it an allowance of 15 cents a cake, the buyer by the acceptance did not waive the breach of warranty.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 817-823; Dec. Dig. ⬉⟿288.]

7. SALES ⬉⟿427—REMEDIES OF BUYER—BREACH OF WARRANTY.

In a buyer's counterclaim for breach of warranty of ice sold, where the seller objected to any proof of its agreement to make an allowance of 15 cents a cake, on the ground that there was no proof that the chairman of its executive committee had power to make such an agreement, securing a ruling in its favor, the buyer could consider the agreement rescinded, and sue for breach of the original warranty.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1210-1213; Dec. Dig. ⬉⟿427.]

8. SALES ⬉⟿121—REMEDIES OF BUYER—BREACH OF WARRANTY—INSTALLMENT CONTRACT—STATUTE.

Under Sales Act, § 126, providing that where there is a contract to sell goods deliverable in installments, and the seller makes defective deliveries in respect to one or more installments, it depends on the terms of the contract and the circumstances whether the breach of contract is so material as to justify the injured party in refusing to proceed and sue for damages for breach of the entire contract, or whether the breach is

⬉⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

separable, giving rise only to a claim for compensation, where the buyer of ice contracted for the entire output of the seller's plant under a warranty of quality, and defective deliveries were made, though the buyer could not rescind the contract for breaches of warranty on accepted deliveries, it could refuse to take other deliveries thereafter which proved defective, and, upon the seller's admitting or stating that it could not furnish better ice, the buyer could consider the refusal so material a breach as to refuse to receive further deliveries, and where, after waiver of such breach, to give the seller another day to furnish merchantable ice, the seller failed to do so, the buyer could refuse to proceed and sue to recover a deposit guaranteeing its performance.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 296–301; Dec. Dig. ⊛121.]

Appeal from City Court of New York, Special Term.

Action by the Interboro Brewing Company, Incorporated, against the Independent Consumers' Ice Company, Incorporated, in which defendant counterclaimed for breach of warranty. Judgment for plaintiff, and from such judgment, and an order denying its motion for new trial, defendant appeals. Reversed, and new trial ordered.

See, also, 83 Misc. Rep. 119, 144 N. Y. Supp. 820.

Argued November term, 1915, before LEHMAN, BIJUR, and FINCH, JJ.

Louis Halle, of New York City (Oswald N. Jacoby and Samuel J. Levinson, both of New York City, of counsel), for appellant.

Henry A. Rubino, of New York City, for respondent.

LEHMAN, J. The plaintiff and the defendant, on the 22d day of April, 1913, entered into a contract whereby the plaintiff agreed to manufacture ice at its ice manufacturing plant to the full capacity of the plant and the defendant agreed to purchase the total output until the 31st day of December, 1913, at certain agreed prices. The contract provided that the ice should be satisfactorily frozen and of a merchantable character. The contract further provided that the defendant should deposit the sum of $3,000 in cash for the faithful performance of the conditions of the agreement, and that in the event of failure to comply with all the terms and conditions of the agreement the "plaintiff" may apply the said sum as liquidated damages and not by way of penalty. The plaintiff has now brought this action for the agreed price of ice delivered between September 1 and September 13, 1913.

The answer sets up three counterclaims, of which the second was withdrawn before the trial. The first counterclaim seeks to obtain damages for an alleged breach of warranty, in that the ice delivered prior to September 15th was not satisfactorily frozen and of a merchantable character. The third counterclaim is for the return of the $3,000 deposited under the contract, and sets forth that on September 15, 1913, the defendant notified the plaintiff that it (the defendant) would not accept any future deliveries under the said agreement unless they were satisfactorily frozen and of a merchantable character; that the plaintiff notified the defendant it could not and would not make deliveries in the future other in quality and character than those made up to that date; that the next deliveries after said notifi-

cation of September 15th were not satisfactorily frozen and of a merchantable character, and that this defendant thereupon rejected and refused to accept the same and terminated the agreement; that the defendant has received or accepted no deliveries of ice from the plaintiff since September 15, 1913.

At the trial the defendant practically conceded the plaintiff's case, and then presented evidence to sustain its counterclaims, and at the close of its case the learned trial justice dismissed the counterclaims. Upon a previous appeal (83 Misc. Rep. 119, 144 N. Y. Supp. 820) this court had occasion to consider the answer and held that the counterclaims were properly pleaded. Upon that appeal the law of this case was settled in the following particulars: (1) That where a seller has failed to comply with his warranty in deliveries under a contract, and then broken the agreement by refusal to perform according to its terms, the buyer has a right to sue both for the breach of warranty upon the deliveries he has accepted and for the breach by refusal to perform. (2) That, if the seller refuses to carry out his contract, the buyer has an immediate right to the return of the deposit.

The appellant now claims that at this trial the trial justice did not follow the law of the case as laid down upon the previous appeal; but I find nothing in the record to bear out this contention, and we are bound now to consider that the counterclaims were dismissed because in the opinion of the trial justice the defendant's evidence was insufficient to establish the counterclaims as pleaded. For this reason it is necessary to consider the evidence in detail, to determine whether or not the defendant has established a prima facie case upon either or both counterclaims.

The pleadings have been somewhat amplified by a bill of particulars, and under the pleadings so amplified the defendant was called upon to prove under his first counterclaim: (1) That the ice delivered was not satisfactorily frozen or of a merchantable character for the following reasons: It was cloudy, of the color of dirty snow, and it contained human or animal waste, together with unwholesome growth of bacteria, and was unfit for human consumption. (2) That the defendant was obliged to sell this ice at the price of 45 cents per cake, instead of the market price of 60 cents per cake.

[1, 2] Upon the first issue the defendant attempted to prove that a bacteriological examination was made of ice taken from plaintiff's factory on September 18th, or three days after the last delivery of ice, and that this examination disclosed the presence of dangerous bacilli. I think that the trial justice properly excluded this evidence. Although the defendant proved that neither the plant nor the operation of the plant was changed in these three days, yet the presence of bacilli in water may be due to so many different causes that the condition of the ice on September 18th allows no fair inference of the same condition previous to September 15th. The defendant, however, did show through its treasurer that he was present at the plaintiff's plant "about every day," and that the ice was throughout that time yellow, cloudy, dirty, and salty, and that it was unmerchantable. The defendant further showed, though part of this evidence was erroneously stricken

out, that in June the plaintiff's manager and the chairman of the executive committee had admitted that the ice was defective, and agreed to an allowance of 15 cents per cake. Moreover, the largest retail dealers who bought this ice from defendant testified without objection to its defective condition.

[3-6] There is therefore ample evidence to warrant a submission to the jury that the warranty was in fact broken, and that this breach applied to all the ice delivered, and in the court below the plaintiff never moved to dismiss for failure to prove this breach. The more serious claim, however, is that the defendant has failed to prove his alleged damages. The conceded market price was 60 cents a cake. The plaintiff delivered the ice to the defendant's customers, and received from them for defendant's account the sum of 60 cents per cake. Therefore, the plaintiff urges, it affirmatively appears, that the defendant has suffered no damages. The defendant, however, produced evidence that its large customers bought from it both artificial and natural ice, and that it was obliged to arrange with these customers that it would furnish 15 cents' worth of natural ice without charge as an allowance upon each cake of artificial ice delivered to them by plaintiff. In effect, therefore, if this testimony is true, these customers did pay only 45 cents for the artificial ice, as alleged in the bill of particulars. The plaintiff also claims that this testimony is palpably fabricated; but obviously it is not for us to weigh the probability of the testimony, corroborated by several witnesses and not denied. Upon the dismissal of the counterclaim, we of course may consider only whether a prima facie case has been established.

Finally, the defendant urges that, inasmuch as the defendant has accepted the ice, it has waived the defects. Under section 130 of the Sales Act it is expressly provided that:

"In the absence of express or implied agreement of the parties, acceptance of the goods by the buyer shall not discharge the seller from liability in damages or other legal remedy for breach of any promise or warranty in the contract to sell or the sale. But, if, after acceptance of the goods, the buyer fails to give notice to the seller of the breach of any promise or warranty within a reasonable time after the buyer knows, or ought to know, of such breach, the seller shall not be liable therefor."

In view of the fact that the defendant has testified that it gave notice to the plaintiff immediately, and continued to take the ice only because the plaintiff's chairman of the executive committee agreed to make to it exactly the same allowance which it is now claiming as damages, it cannot, of course, be contended that it did not give prompt notice.

[7] The plaintiff, however, contends that the alleged agreement which the defendant claims to have made does constitute an "express agreement" (within the meaning of this section) by which the acceptance of the goods was to constitute a waiver of all rights to damages, and that the defendant could thereafter sue only upon this agreement. If the plaintiff actually conceded this alleged agreement and was willing to carry it out, then there might be serious question as to whether the rights of the parties would not be fixed by it. The plaintiff, however, even objected to any proof of this agreement, on the

ground that there was no proof that the chairman of the executive committee had power to make such an agreement and secured a ruling in its favor on this ground. Since plaintiff either denies the making of the agreement or repudiates any obligation thereunder, if made, the defendant has a perfect right to consider the agreement, if made, as rescinded, and sue upon the original agreement. It follows that the dismissal of the first counterclaim was error.

[8] The plaintiff seeks to sustain the dismissal of the third counterclaim on the ground that the defendant had no right to terminate its contract by reason of any breach of warranty on installments actually accepted, and that there was no proof of any rescission after the defendant had served notice on September 15th that it would insist upon the plaintiff fulfilling its contract and delivering merchantable ice. Of course, the defendant had no right to rescind the contract by reason merely of breaches of warranty on previous deliveries; but they had an absolute right to refuse to take other installments if these installments were also defective. In this case, on September 15th the plaintiff stated in effect that it could not furnish better ice. The defendant then had a right to consider this refusal so material a breach of the contract as to justify it in refusing to receive any further installments. Its subsequent letter of the same day was, however, a waiver of this breach to the extent that it was bound to give the plaintiff at least a further opportunity. It did give the plaintiff this further opportunity the next day, and the plaintiff again offered ice which was claimed to be unmerchantable. The defendant was then justified in refusing to proceed further and suing for its deposit. See section 126 of the Sales Act.

The plaintiff urges various other alleged defects in defendant's proof, but I do not think these other contentions sufficiently serious to require detailed examination.

Judgment should be reversed, and a new trial ordered, with costs to appellant to abide the event. All concur.